PEOPLE ex rel. RODENBERG v. WARDEN.

(Supreme Court, Appellate Division, First Department. January 3, 1913.)

1. CRIMINAL LAW (§ 1206*)—PUNISHMENT.

A sentence to the penitentiary of the county of New York after conviction of receiving stolen goods was authorized under New York City Consolidated Act (Laws 1882, c. 410) § 1453, providing that any person convicted of such an offense in the city of New York may be sentenced in the discretion of the court to imprisonment in the city penitentiary for the same term as he may be sentenced to imprisonment in a state prison; such statute being in harmony with the Penal Code, and not repealed by Penal Law (Consol. Laws 1909, c. 40) § 1308, providing that the crime of receiving stolen property is punishable by imprisonment in the state prison for not more than five years or in the county jail for not more than six months.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3271–3277, 3279, 3280; Dec. Dig. § 1206.*]

2. CRIMINAL LAW (§ 1217*)—PUNISHMENT—UNIFORMITY.

The uniform administration of criminal laws throughout the state does not require that all sentences to imprisonment should be carried out in similar institutions.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 3269; Dec. Dig. § 1217.*]

3. CRIMINAL LAW (§ 1206*)—"PENITENTIARY"—"COUNTY JAIL."

The "penitentiary" of the county of New York is not the county jail of that county in the sense in which the phrase "county jail" is used in the Penal Laws.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3271–3277, 3279, 3280; Dec. Dig. § 1206.*

For other definitions, see Words and Phrases, vol. 2, p. 1663; vol. 6, pp. 5279–5280.]

Appeal from Special Term, New York County.

Application for writ of habeas corpus by the People, on the relation of Philip Rodenberg, against the Warden, etc. From an order (75 Misc. Rep. 77; 132 N. Y. Supp. 577) sustaining the writ and discharging relator, the People appeal. Reversed, writ dismissed, and relator remanded.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Robert S. Johnstone, of New York City, for the People.

Louis Levy, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

SCOTT, J. The relator was convicted in the Court of General Sessions of the crime of criminally receiving stolen goods, and was sentenced to imprisonment in the penitentiary of the county of New York for the term of one year. At the expiration of six months' imprisonment, he sued out a writ of habeas corpus claiming that he could not legally be sentenced to the penitentiary for the offense whereof he had been convicted for more than six months, that as to the excess of imprisonment over that term his sentence was void, and that having served six months he was entitled to be discharged. The Court at Special Term acceded to this view, and discharged him.

[1] The crime whereof the relator was convicted is defined by section 1308 of the Penal Law (Consol. Laws 1909, c. 40). The definition is not important here, but the provisions as to the punishment are. It is provided that a person convicted of the crime "is punishable (1) by imprisonment in a state prison for not more than five years, or (2) in a county jail for not more than six months, or by a fine of not more than two hundred and fifty dollars, or by both such fine and imprisonment." There were thus two distinct punishments prescribed, either of which might be imposed by the court. It is quite clear that in the case of this relator the court did not undertake to impose the milder sentence of six months' imprisonment in the county jail. The sentence, if it can be upheld at all in its entirety, must be upheld under the authority to impose a sentence of imprisonment in a state prison. The validity of relator's sentence is sought to be sustained under the provisions of section 1453 of the New York City Consolidation Act (Laws 1882, c. 410), which, unless repealed by implication by the enactment of the Penal Code, remains in force. It reads as follows:

"Whenever a conviction shall be had in any criminal court in the city of New York, of any person for buying or receiving any personal property feloniously stolen from another, knowing the same to have been stolen, such person may be sentenced, in the discretion of the court, to imprisonment in the penitentiary of the said city for the same term of time for which such person may by law be sentenced to imprisonment in a state prison."

The learned justice who made the order appealed from was of the opinion that the above-quoted section of the Consolidation Act had been repealed by the Penal Code, relying as an authority for that conclusion upon People v. Jaehne, 103 N. Y. 182, 8 N. E. 374. That case involved the question whether section 58 of the Consolidation Act defining the crime of bribery of a member of the common council or an officer of the corporation of the city of New York, and fixing a punishment of not more than two years in the penitentiary for the specific offense defined by that section, was superseded and impliedly repealed by section 72 of the Penal Code, which defined the crime of bribery, and embraced within its provisions the officers mentioned in, and hence the offense defined in, section 58 of the Consolidation Act and prescribed a maximum punishment of 10 years in the state prison. Precisely what the court held was that the Penal Code superseded the Consolidation Act "whenever the two statutes are in conflict" and that any penal provision of the Consolidation Act "in conflict with the Penal Code" was so superseded. 103 N. Y. 189, 8 N. E. 375. The

Court of Appeals was led to the adoption of this view by a considera-
tion of the reasons which led to the adoption of the Penal Code. As
Judge Andrews said:

"The Penal Code, as its title implies, is an institution of criminal justice
of general application, and was enacted in harmony with the tendency of
recent legislation for the purpose of embodying in a single statute the system
of criminal law applicable to the state, and substituting the statute so enacted
in place of the great number of statutes and amendments of statutes which
together, before the enactment of the Code, constituted the body of the crim-
inal law. * * * It is the plain inference from these provisions that the
Penal Code was intended as a revision of the prior laws in respect to crimes
and their punishment, and as a substitute for the scattered and fragmentary
legislation which preceded it. The Penal Code contains no general clause
repealing prior statutes covering the subjects embraced in its provisions. It,
however, defines and prescribes the punishment for murder, larceny, bur-
glary, and all the generally recognized offenses, and it cannot be doubted that
its provisions on those subjects were intended as a substitute for similar
provisions in prior laws." 103 N. Y. 192, 193, 8 N. E. 377, 378.

That decision is ample and unquestioned authority for the proposi-
tion that, in so far as concerns the definition of crimes and their pun-
ishment, the Penal Code repealed, by implication, all prior special stat-
utes inconsistent with it.

In the Jaehne Case the Court of Appeals, for the reasons stated,
departed from the general rule that a special statute providing for a
particular case or applicable to a particular locality is not repealed by
a general statute. The exception to the rule is where the intent to
repeal or alter the special law is manifest, as the court found that it
was with respect to the definition of, and the punishment for, the crime
of bribing a public officer. We can see no reason for pushing the doc-
trine of the Jaehne Case any further than is justified by the reasons
given for its decision. The arguments in favor of finding an implied
repeal of section 58 of the Consolidation Act by section 72 of the Penal
Code are unanswerable, but they have no application to the case of
a local and special provision of the Consolidation Act respecting the
place in which the punishment of imprisonment shall be endured.

[2] The essential features of the Penal Code respecting crime are
to afford a definition, and to prescribe the extent of the punishment
to be inflicted. In these particulars it is most desirable that a uniform
law should extend over the entire state. No such reason demands that
all sentences to imprisonment should be carried out in similar institu-
tions, for in the nature of things it will not be convenient, nor does
any law require, that precisely similar institutions shall be maintained
in every county. The uses to which county jails are to be put under
section 90 of the County Law (Consol. Laws 1909, c. 11) are (1) for
the detention of persons duly committed to secure their attendance as
witnesses in any criminal case; (2) for the detention of persons charged
with crime, and committed for trial or examination; (3) for the con-
finement of persons duly committed for any contempt or upon civil
process; (4) for the confinement of any persons convicted of any of-
fense other than a felony and sentenced to imprisonment therein or
awaiting transportation under sentence to imprisonment in another
county. In the city of New York there is no one prison fulfilling all

these requirements, and for the very sufficient reason that owing to the great size of the city, and the consequently large number of persons who have to be incarcerated from time to time, it would be impracticable to provide a county jail such as can be and is maintained in less populous counties. This fact furnishes an amply sufficient reason for the enactment of a special law for the city of New York that a person convicted of receiving stolen goods in that city may be sentenced to the penitentiary instead of a state prison, and there is no reason resting upon the supposed desirability of uniform legislation which requires that, as to this detail of local administration, the special law should be deemed to have been impliedly repealed by the general law. Indeed, the framers of the Penal Code seem to have had in mind the preservation of the provisions of local and special statutes for the punishment of certain classes of offenders.

Thus section 704 of that act (now section 2183 of the Penal Law) provided as follows:

"Where a person is convicted of a crime, for which the punishment inflicted is imprisonment for a term exceeding one year, or is sentenced to imprisonment for such a term, the imprisonment must be inflicted by confinement at hard labor in a state prison. *But this and the two last sections shall not apply to a case where special provision is made by statute as to the punishment for any particular offense* or class of offenses or offenders, nor to the cases specified in sections six hundred and ninety-eight, six hundred and ninety-nine, seven hundred, and seven hundred and one."

[3] The fundamental error of the relator's position lies in assuming that the penitentiary in the county of New York is the county jail of that county in the sense that the words "county jail" is used in the Penal Law. For certain purposes, it is used as a county jail is used in other counties, but it is something more. Penitentiaries are recognized by law as institutions quite distinct from county jails (see article 12, Prison Law [Consol. Laws 1909, c. 43]), and in many sections of the Penal Law county jails and penitentiaries are unmistakably referred to as separate and distinct institutions. Thus in section 2182, referring to sentences generally, it is provided that:

"Where a person is convicted of a crime for which the punishment *inflicted* is imprisonment for *one year*, he may be sentenced to, and the imprisonment may be inflicted by, confinement either in a county jail, or in a *penitentiary* or *state prison*. No person shall be sentenced to imprisonment in a state prison for less than one year."

It would seem to have been the purpose of the Legislature to establish penitentiaries as part of the state's system of prisons and as subsidiary or substitutional state prisons to relieve the latter from the care of short term convicts. Hence the provision of section 2182 of the Penal Law that no person may be sentenced to imprisonment in a state prison for less than a year.

Our conclusion is that the section of the Consolidation Act, quoted above, being a mere local regulation as to the place where the imprisonment is to be inflicted, rendered necessary by the peculiar conditions existing in a great city, is not inconsistent with and therefore was not repealed by the Penal Code, but, on the contrary, is in entire harmony with the general scheme of the Penal Code, and its successor, the

Penal Law, which contemplated the incarceration of long term offenders in state prisons, shorter term offenders convicted of serious crimes in penitentiaries, and of minor offenders sentenced for a term of a few months in county jails, where such institutions exist, or in penitentiaries. It follows that the relator's sentence as imposed was lawful and valid.

The order appealed from must therefore be reversed, the writ of habeas corpus dismissed, and the relator remanded to serve out the unexpired term of his sentence. All concur.